Bingo Bingo Bingo Calendar The single most important issue on this appeal relates to the interpretation of the claim term, predetermined winning combination. A predetermined winning combination, according to the claims, needs to be established and needs to be achieved in order to achieve, to win a progressive bingo jackpot. There are several aspects to the interpretation of this term. One aspect is, how do we exactly go about creating such a combination? Another aspect is, how specific do we need to be in creating it in order for it to be considered predetermined? And a third aspect is, when exactly do we create it for it to be predetermined? On this appeal today, really there are two issues that concern the parties. The one issue is, how specific do we have to be? And the second issue is, how do we go about creating it? The specificity issue relates directly to infringement. And the how do we go about creating it, that relates to validity. And since the infringement issues really dominate this appeal, I'll start with the specificity issue and take that through literal and doctrine of equivalence infringement. But there's a whole series of steps here that are performed by some, by the bingo hall itself, the presenting of the card, and so on and so forth. This never has been, this method was offered for sale, but it was never sold. It's never been played, has it? That's correct, Your Honor. So how could those steps have ever happened? It's an offer for sale case, Your Honor. Well, but how could those, if those steps have never happened, where's the infringement? We premise infringement on the notion that there's been an offer for sale of this method. In addition to that, we have argued to the district court that there's a contributory infringement based on the offer for sale of the software and the hardware that would be used to play Rainbow Bingo. And there's been no contention that that software and hardware has a substantial non-infringing use. In addition to that, we've argued to the district court, and this has not been ruled on yet, that in any event we should be able to assert a claim for a declaration of infringement in the event the game were sold, in the event the game were played, in the event all of those steps were in fact performed. I guess I'm asking, can a method claim be infringed by an offer to sell? It's our contention that it can, Your Honor. It's our contention that 271A recites that one of the categories of infringement is an offer for sale, and that would be of a patented invention. The statute, by its plain and clear language, does not single out only apparatus claims or composition claims could be infringed by an offer for sale, but instead any patented invention. And certainly, the statute is replete with examples where Congress has been specific with respect to the type of claim that would be practiced for their- How do we know if the method would have been practiced identically as claimed? I believe we know that, Your Honor, from the evidence that's been adduced in the case. We know that from the product descriptions, the product offerings, the advertisement literature, from the depositions of the game tech principals who were involved with respect to the development of the game. Things of that nature, Your Honor. Let's assume and proceed with your argument that the case is properly before us. Thank you, Your Honor. With respect to infringement, we get into this issue of specificity. How specific does the claim term require the predetermined winning combination to be established for it to be a predetermined winning combination? And we look there to the term progressive, which is in the claims themselves, and we look to the description and the specifications. And I should step back for a moment and note that what's interesting about this case is that both parties are looking to the specification. We don't have a situation here where one party says, please look at the specification, and the other party is saying, no, the claim language is sufficient. Here we both look to the specification, we just read it differently. But so when we look at this term progressive, we know that that means, and this is undisputed, that the rules are the same from game to game, and that's how the jackpot progresses. If the jackpot isn't won in game one, it rolls over to game two, and it increases, and so on and so forth. And the classic example that we use in the brief is the Powerball Lottery, where it's the same rules each time. And if it's won, great, and then it starts over. And if it's not won, it just keeps growing in size. And so it's our contention that the specificity required is basically that needed to make it a consistently defined progressive jackpot that would be the same in game one, game two, game five, and so forth. Game Tech presented the district court with the argument that it would be necessary to define the precise elements comprising the combination for purposes of a particular game. I think we want to make a couple of points here. One, this term precise elements essentially comes from nowhere. It's not in the specification, it's not in the prosecution history, and it's not entirely clear what exactly it means. But when we look to the specification of both patents, we see again and again the same type of generic example. An all red bingo is a predetermined winning combination, again defined at the level that would be consistent from game to game. If the Planet Bingo interpretation is applied, there's no dispute that there's at least an issue of fact as to whether or not there's infringement of this particular claim term. If the Game Tech interpretation is affirmed, we then turn to whether or not there's literal infringement here. And here I think there's an interesting point to be made, and that is that even though we of course are challenging the court's order, in most instances the court's analysis actually supported Planet Bingo's position. In other words, the court found that in fact there are predetermined aspects to Game Tech's creation of its winning combinations, its blue, purple, ruby, and emerald combinations. And that's at page A29 of the court's order, I think continuing on to A30. And in addition, we had evidence that Game Tech's own patent filings called its combinations predetermined and called them predefined. And so clearly, if they're able to call them that in their own patent filings, and of course there's a requirement of inventor candor in such filings, that to us is very compelling evidence, at least sufficient to raise an issue of fact as to whether or not there's literal infringement here. If we then turn to the doctrine of equivalence, we know a couple of points. Again, initially the district court was very supportive of our position. Well, but the claims are specific to a game, not the rules for all games, right? You're saying that it's predetermined because the rules are set in advance. Well, the claim is specific to each individual game, and it's saying that that's what must be predetermined. And it's not set until after the first ball is drawn, isn't that correct? A couple of points that I have. In the accused device. First, we would note that the use of the term progressive, which is expressly inserted into the claim language, by definition requires reference to games coming before and games coming after. With respect to the timing aspect of it, Plano-Bingo does not dispute that the combination needs to be established before the game begins, before the first ball is drawn. Before the game begins? That's correct, Your Honor. And that doesn't happen with the accused method, does it? It does, Your Honor. Before the first ball is drawn on an attract graphic, Game Tech publicizes to the players, we're going to have blue, purple, ruby, emerald jackpots. Those are the rules for all games. Correct. We're talking not about the rules for the games now. We're talking about predetermination of this specific game. Is that done before the first ball is drawn? It is, Your Honor. In the accused method. It is, Your Honor. I'm sorry to interrupt. That is done, Your Honor. In every specific game, there will be a blue, a purple, a ruby, an emerald, precisely according to those rules. The only thing the player doesn't know, for example, with respect to blue... Is whether it's blue or ruby or emerald. Well, they know it will be there, and they're competing for that. What they don't know is, is my blue going to be in columns B, I, G, and O? Or which three of those columns is it going to be in? And when we asked Plano-Bingo's expert, does a player even care about that? Does it change the odds? He said, no, they don't care. It's essentially irrelevant information. But they don't know whether it will be blue either, on your example. Is it until the first ball is drawn? I'm sorry, Your Honor. You said they wouldn't know in which column the blue would be, but they wouldn't know until the first ball is drawn whether, in fact, blue is the color. Isn't that right? They would know before the first ball is drawn that there's going to be a blue jackpot. They know that with 100% certainty. What they don't know is, is it B, I, and G? Is it I, G, and O? Is it B, G, and O? They don't know which particular columns it's going to appear in, but they know with absolute certainty that they are playing for a blue jackpot. They know what they have to do to achieve it. But that's just the rules of the game. You're just saying the rules are predetermined. Isn't it different than having a predetermined winning combination? You're saying, well, we have predetermined rules. That's not the language of the claim. It's a predetermined winning combination. And that winning combination is determined by whether the blue is in the B or in the O category, right? And that has to be determined before the game starts. In our view, Your Honor, it's a question of the degree to which you define it. And you can always define it further. For example, even in our patent, it's undisputed that the players don't know before game play starts which balls will be making up the winning combination. And there are games of bingo where that occurs. There are speed types of games of bingo where they say these three numbers are the winners. And then you're given a card and sort of like a scratch-off lottery ticket. If you have them, you win. If you don't, you don't win. And so you can have a game always with a greater degree of specificity. Here there is a level of specificity. There is a level of predetermination. And in our view, there's a sufficient level. And, again, the district courts expressly found that there are predetermined aspects. They call it predetermined in their own patent files. I see I'm getting into my rebuttal time. Okay. Thank you, Mr. Weiss. Mr. Stern. Good morning, Your Honors. May it please the Court. I'd like to address three main points, which are touchstones for the questions that Your Honors have asked this morning of Planet Bingo's counsel. It is our position in this case that in this appeal, Planet Bingo has sought to expand the reach of the asserted patents beyond anything that's contemplated by either the claims themselves or the specification. The claims are clear in both the 289 and the 786 patents. Both of those patents specifically claim certain sorts of what they call marking or designation of specific sorts of bingo media, either a bingo ball in the 289 or the flash board in the 786. They also make very clear in both claims, in the claims of both patents, that those colorization or marking or designation of those particular conventional bingo devices must take place before the start of the game. And one thing is clear in this case, it should be, it's undisputed, that my client's game concept, which was never implemented as Judge Rader pointed out, number one, does not use the colorization or marking of balls, physical balls, in any way, shape, or form. Number two, the Rainbow Bingo game does not use in any way, shape, or form any sort of flash board. And number three, the predetermination requirement of the winning combination as dictated by the claims of the 289 and 786 does not exist in Rainbow Bingo for the simple reason that the specific winning combination for each game is determined after the first ball is drawn. As the questions asked by Judge Rader indicate, one of the things that we have been very clear about, both before the district court and here, is that there's a difference between the rules of the game and the specific winning combination. Each of the claims of the 289 and the 786 patent specifically require that the winning combination is identified for each game. Counsel for Planet Bingo argued before, Your Honors, and they've argued in their brief here, that there is a requirement in the 289 and the 786 patents that there be consistency between the winning combinations between various games. He's put it another way, that because a winning combination is predetermined in one particular game, that in the follow-on game, that same winning combination must apply. Your Honor, we submit that if the court looks at the 289 or 786 claims, or the specification, or the file histories of either of those patents, there's nothing in those patents that requires any such continuity. In fact... He didn't argue it's the same combination in the follow-on game? Yes, he did. Your Honor, what he said is that there must be consistency with respect to the winning combination between the games, because the claim is that they're progressive. The theory is that, well, if we're playing... Right now, let's assume that we're playing one of their games... Consistency doesn't mean identical, does it? Well, actually, Your Honor, in their brief, they actually argue... That means that, for example, if in one particular game, five bingo balls, numbers 1, 2, 3, 4, and 5, are all colored red, and those are the winning combination for the progressive game, then in the follow-on game, that same winning combination must apply. Now, my point here, Your Honor, is simply that there's no such requirement in the specification. And the reason why they're claiming this consistency is because they realize that in our game, concept... You know, I'm having a difficulty talking about our game as a real thing, because it isn't a real thing. It's just a concept on a piece of paper. In our game, before each game, the electronic bingo card and shoots, or 2s, are displayed, but they are not colorized. The colorization takes place after the commencement of each game, and for each game, the colorization is different. Different columns receive different colors, different rows may or may not receive some of the designated jewels or coins that are identified. And why this is fundamental, Your Honor, is it means it's a fundamental distinction... First of all, there is no requirement of consistency between the games. And it's clear that in our case, that in the Rainbow Bingo games, each winning combination is determined after the call of the first ball, and is different for each particular game. I also want to draw on a point which we raised below. There's no argument by Planet Bingo here that it is not properly raised before, Your Honor, and it's the point that Judge Rader made. One of the issues that we've had in the case is the fact that this is a pure offer-for-sale case. There's no claim that my client ever made... But that applies to the entire patented invention, doesn't it? Excuse me? That applies to the entire patented invention, doesn't it? Doesn't that suggest that a method would be one of the patented inventions that could be offered for sale? No, Your Honor. I don't think it can, as a matter of law. That is to say, the question that Your Honor is asking, that Your Honor asked, I think, directly, was how would a method, can a method claim be infringed if it's not being practiced just by an offer-for-sale? And we have cited to the court what we think are the controlling decisions from this circuit, none of which, none of which have been contradicted by Planet Bingo. There's the Joy Technology case which we cited. There's the MOBA case we cited. And most recently, Your Honors, I think the case that is most on point is the NTP v. Rim case, which is not a year old. It's from August of 2005. And we've cited that in our brief, and I don't know if it would be helpful for this point, but in the NTP v. Rim case, the question that was raised, that was directly addressed, was whether or not under Section 271A, which is the basis of the lawsuit here, whether or not there can be infringement by an offer-for-sale of a method. And there is an extensive discussion in the case which concludes that Congress, I'm quoting from the case, this is page 1319 of the decision, Congress has consistently expressed the view that it understands infringement of method claims under Section 271A to be limited to use. There is then a discussion of the original 271A as modified. In the United States. Excuse me? Use in the United States. You're not drawing such a distinction, are you? I'm afraid I can't. One more time. I'm sorry. I'm trying to relate your example to the facts of this case. Yes. And, Your Honor, for the purpose of NTP v. Rim when they were discussing, yes, this case is entirely in the United States. It's not a case involving a force. That's where their method claim came in. Those steps were practiced outside of the United States. So I'm trying to understand your emphasis on that case as saying there's a difference between sale and on sale. The key, Your Honor, is that NTP v. Rim is just the most recent case that articulates the general rule that an offer, that a method claim cannot be practiced by an offer-for-sale. NTP v. Rim is the only recent case, but we've also cited the MOBA decision. We've also cited the Joy Technologies decision, all of which say you cannot practice a method claim by an offer-for-sale. That's why you confuse me. I know no issue where the method was not practiced someplace in the Rim case. That's correct. I think it was practiced in the Rim case, Your Honor. I don't think it was practiced. That's why I'm trying to understand the relevance to this case. Well, Your Honor, my only point, the point that I'm trying to make here is that in our case, I think we have, it's really an a fortiori, at some place in the Rim case, the NTP v. Rim case, the method was practiced. The question was, was it practiced here? In our case, there is no claim that we practiced the claim at all, the method at all. And, in fact, one of the things that we pointed out to the court, given the nature of the method that exists in this case, which is a two-agent method, the claims have been written in such a way that in order to infringe, no one party can infringe. The methods require two parties. They require the bingo hall to perform some of the steps, and they require the player to perform some of the steps. There's no question that here, my client allegedly made an offer-for-sale to a bingo hall. Now, we, of course, dispute that it was an offer-for-sale, but that's the best they can claim, that there was an offer-for-sale of a method to one party that was, under the terms of the method claims, supposed to participate in the actual practice of the claims. There's been no case that's been cited to Your Honors that has ever found that in a context like this, a two-party method claim has been infringed by the offer-for-sale of a game concept or method to one of those parties. And we've argued this here as well. Frankly, from our perspective, Your Honor, this is sort of a gating item. The real question is whether or not there's any basis at all to be able to sue Game Tech for any conduct when the conduct that they've engaged in does not arise to the level, even if the allegations of the complaint are true, to an infringing act. And, again, I wanted to just to— There has been an offer-for-sale, though, right? Well, we disagree with that, Your Honor. Has there been—you say there has not even been an offer-for-sale. No, Your Honor. Also, this is before— Well, you could challenge that. Assuming there's an offer-for-sale, you still make the point that there's— Absolutely. And if there's an offer-for-sale of a patented invention, why doesn't that fit right within the statutory terms? Well, because the first question is to whom would the offer be made? Starting logically, the first argument that we make— Well, let's assume that you have gone to a series of bingo parlors, and you have offered this exact line-for-line method to them for sale. Right. Could that be infringement? Not with this patent. And the reason is because the claims require the practice of— But you're telling them that this is exactly what we're going to sell to you, a method where you hand out the cards, the players do the follow, and you list it. That's right. Element by element, just as listed in the patent. We then—if the method claim requires actions by the person, the offeree, and by a third party, and we're talking to just the offeree, then in our view, we're not offering the method to them. But you're instructing them as exactly how they're going to perform the game. And you've given them—let's assume you've taken the language right out of the claim, and you say, first thing you do is—and it's exactly the language of the claim. I mean, obviously this isn't the exact case, but— It's a hypothetical. Right. No, hypothetically, Your Honor, I think that the concept here is that if we start accepting the notion that a person can be liable for infringement by offering to somebody to perform a method where the person who is being offered cannot, by their very nature, perform the method by themselves. But you're— I guess in your hypothetical, Your Honor, you're asking me, well, let's assume that you've actually instructed them what they're supposed to do. Exactly. Yeah, Your Honor, that may be a closer case. I guess that's a closer question. Obviously, there's no case that supports that. But I guess the question is, if I was actually talking to the offeree and trying to convince them that what they should do is go out and get the players to do the waging step, then perhaps that could be it. Again, the real question is— At least that fits within the language of the statute, doesn't it? It certainly fits within the language of the statute. But the decisions from this Court seem to indicate, despite the fact that the offer for sale language is in the statute, the offer for sale language was really intended to apply to apparati or to an apparatus, and that you could— But that isn't what Congress said, is it? Congress said patented invention. Well, again, that's what the statute says. But when one delves below the statutory language and looks at what the congressional intent is, which NTP v. RIM does discuss, it looks pretty clear that method claims— I thought the language of statutes was what Congress intended. Well, of course. That's true, Your Honor. But the purpose of this Court in determining whether or not— We can tell them they intended something else, huh? Sure. And I think you frequently do. I'd like to get back, if I can, to the point with respect to predetermination. The other argument that was made is that— Well, I guess one of the major points that this case presents is how far the doctrine of equivalence can be stretched. And one of the things that Judge Proh said, which I think is about as eloquent as could be stated about this case, is that after is the opposite of before, not its equivalent. And there seems to have been a concession, if I understand, that's been made here by Plano-Bingo, that the claims here require that the winning combination be determined before the game commences. And that's true of the 289 and it's true of the 786. And if that's the case, that it's our position and has been our position, and it doesn't sound like it's rebutted now in front of Your Honors, that a game that has the winning combination determined after the game commences cannot, as a matter of law, be equivalent. If there's anything else I can add to Your Honor, I'm happy to. Okay. Thank you, Mr. Stern. Mr. Weiss. Thank you, Your Honor. I just wanted to touch very, very briefly on the doctrine of equivalence issue that Mr. Stern raised at the conclusion of his argument. If one reads the Court's order, until the part where it starts to discuss the Vitiation Doctrine, it reads like an order that's going to deny summary judgment. And in fact, the Court says under the Wright and Ethicon cases, it should deny summary judgment. But then under the Sage, Cooper, and Assist Technologies cases, it decides that it's not going to give summary judgment. I'm sorry, that it is going to give summary judgment to Game Tech. And in our view, those Vitiation cases raise a very specific set of circumstances. Basically, they create there a situation where the patentee in the body of the claim uses a narrow structural element that is essentially binary in nature. Either you have it or you don't. And the examples in the case include terms such as on the top of, above, things of that sort all the way through. And so the courts are saying there, look, the patentee was very specific here, defined his claim in a very narrow way, and we're not going to give him a broad range of equivalents for that. But here, that's not the case. This term before is not in the claim. It says predetermined. It doesn't say before. And so here we have a very straightforward, typical type of analysis where the issue becomes one of, is there a substantial difference or not between the claimed invention and the accused product or method? And here the court below answered that for us. They say there's only a slight difference. They say there are predetermined aspects to the rainbow mango combinations. And so in our view, this case very clearly is a doctrine of equivalence case in the purest sense. And the vitiation doctrine, in our view, is a narrow doctrine that does not have broad application because if it did, of course, in every situation where there isn't literal infringement, there would also be no equivalent infringement either because you can always say, well, gee, the patentee could have done a better job and could have crafted language that would cover the situation as well. This issue about whether the combinations, whether we're talking about rules or combinations, again, it's our position that we are talking about combinations defined at a particular level. In the Game Tech example, in the Rainbow Binger example, after one ball is called, they define it then at a further level. But each combination is not different, and I thought I heard Mr. Stern say that they are. Again, in every single game, there's going to be a blue, and we know that to win our blue, we have to get a blue column jackpot, and there has to be one diamond number. That doesn't change. Now, you could have a true mystery game where you tell players, pay us money, we're not going to tell you how to win, we're not going to tell you what you're playing for, and then after one ball or five balls are called, we're going to spring the mystery on you. We're going to tell you what this game is all about. A game like that, that wouldn't be a predetermined winning combination, because the players truly don't know. Here, they do know, and then after the game starts, they know a little bit more. I think that's all I had, actually, in case there were any other questions. Any questions? Thank you, Mr. Weiss and Mr. Stern. The case is taken under submission.